

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00182-CR

_____

SANTOS RAUL ALVAREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1772509

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

When a man grabs his twelve-year-old son, drags him against his will across concrete, and refuses to let go even after being told, "Stop, you're hurting him," a rational jury could find beyond a reasonable doubt that the man was aware that his conduct was reasonably certain to cause his son physical pain—and thus, bodily injury.

## I. Introduction

Appellant Santos Raul Alvarez appeals his conviction for injury to a child and sentence of three years' confinement.[1] He raises only one appellate point: that the evidence at trial was insufficient to show that he intentionally caused bodily injury to the complainant, his son. In response, the State argues that "the jury was not required to find that Appellant acted with an intent to injure his son. It was only required to find he acted 'knowingly,' and there was legally sufficient evidence to prove that element of the offense of injury to a child." We agree with the State, overrule Alvarez's only point, and affirm the trial court's judgment.

## II. Background/Facts of the Offense

Alvarez and Hannah[2] were never married to each other but had two children

---

[1]Alvarez's sentence was probated.

[2]To protect the identities of the minor children involved in this case, *see* Tex. R. App. P. 9.10(a)(3), we refer to them and their relatives—except for Alvarez—by pseudonyms.

together. In November 2022, the children—James, who was twelve years old at the time, and Amanda—were living with Hannah and her fiancé in Fort Worth, but Alvarez had rights of possession and access to the children. On November 10, 2022, pursuant to a custody agreement, Alvarez arrived at Hannah's house to pick up the children.

What happened next was captured on video. Alvarez came to Hannah's front door. Amanda walked out and hugged him and then got in his car, but James did not want to go with Alvarez. After questioning James about his school progress report, Alvarez asked him for a hug. James stepped outside the front door, onto the front porch, and hugged Alvarez. Alvarez then offered him the "option" of coming with him. James declined, and Alvarez took him by the hand and told him, "You don't -- you don't have a choice. I have physical possession of you now." James then tried to pull away from Alvarez, but Alvarez pulled James's left arm by the wrist. A scuffle quickly ensued as James tried to get back into the house, but Alvarez would not let go of him. Hannah grabbed James around his midsection and started pulling him back into the house, away from Alvarez, but Alvarez grabbed James's left leg and dragged him away from the front door. She yelled at Alvarez, "Stop, you're hurting him!" James, too, pleaded with his father to stop, but Alvarez held onto him and repeatedly said that he was "not letting go" and that he had "physical possession of [his] son."

Eventually, James broke free and ran back into the house.[3] Hannah also went back inside, and Alvarez left in his car with Amanda.

### III. Events Between the Offense and Trial

Both Alvarez and Hannah called the police, who dispatched officers to Hannah's address that night. Later that night, Alvarez's wife, Maureen, dropped Amanda back off at Hannah's house. Weeks later, Detective Chavez of the Fort Worth Police Department spoke to Alvarez over the phone. He invited Alvarez to come in for an in-person interview, but Alvarez never did. Ultimately, Detective Chavez concluded that the offense of injury to a child had been committed and obtained a warrant for Alvarez's arrest. Alvarez was indicted for injury to a child.

### IV. Trial

Hannah, James, Detective Chavez, and one of the officers who had come out to Hannah's house on November 10, 2022, all testified at Alvarez's trial. Hannah testified that James had gone willingly to visit his father in the past but that he expressed hesitancy and "didn't feel comfortable" going with his father after an earlier incident in April 2022. Hannah testified that James had come home after that incident with bruises on the back of his legs and told her that Alvarez had spanked him with a belt. James testified that he and Amanda had been playing in the kitchen, he had put

---

[3]It is not clear from the video evidence how or at exactly what point James was freed from his father's grasp, but near the end of one of the videos, Hannah can be heard shouting, "Go inside, [James]!" James testified at trial that his mother "removed [Alvarez's] hand off [his] leg, and [he] ran into the house."

4

his foot in her face, and she had told their father, who then spanked James on his bottom and legs with a belt.[4] After that, James testified, he did not want to go over to his father's house anymore because he was "scared of him."

James testified that he was scared when his father grabbed his wrist on November 10, 2022, and that it "[f]elt like [Alvarez] was going to snatch" him. He averred that he had never threatened his father or raised a hand to him because he was "just scared of him." He testified that when he was pulling away, his father tightened his grip on his wrist, hurting him and causing him physical pain. He explained that he fell to the ground when his father grabbed his leg and pulled it out from under him. He remembered loudly telling his father, "Dad, please stop." He recalled his father's still pulling on his leg when he was on the ground.

Videos from different cameras at Hannah's house were admitted into evidence and played before the jury at Alvarez's trial, as were two separate videos that Alvarez had recorded on his phone. Photographs of James's injuries were also admitted into evidence; James testified that the marks, scrapes, and bruises on his body depicted in the photographs were not there before the incident with his father. Hannah also testified that the injuries shown in the photographs were inflicted on the night of

---

[4]This comports with Hannah's testimony that Amanda had told her "[t]hat they were wrestling, and his foot went in her face and she got upset. And that was overheard, so their dad intervened."

November 10, 2022, and that James did not have those marks on him before Alvarez grabbed him by his wrist and dragged him out the door.

Alvarez testified in his defense. Regarding the April spanking incident, he testified that he had seen that Amanda was on the floor and that James's foot was on her. He then saw Amanda "get up off the floor and hit back away from her." According to Alvarez, Amanda told him that James's foot had been on her neck, and then James admitted to it. He claimed that he told James that "he could have collapsed her throat, her air passage," and that he would "like to think that" James took that seriously but was "not sure" that he did. He said that things went back to normal the next day; James played soccer with Amanda and two other girls. Alvarez believed that Amanda had forgiven James.

Alvarez testified that he was not trying to hurt James when he pulled on his arm on November 10, 2022. He recalled noticing that James "was really strong. Either that or [Alvarez was] just getting older . . . and . . . couldn't control him anymore." He testified that he did not expect Hannah to put her hand on James and pull him away and that James did not lose his balance until she pulled him. Alvarez repeatedly testified that he "didn't realize" in the moment that James was fighting him or that they were "in a struggle." He maintained that there was no way he would have continued doing something that was hurting James at the time.

Alvarez explained that he had started using the term "physical possession" after reading the Texas Family Code.[5] As he used the term, he understood it to refer to his right to take custody of James for his court-ordered visitation.[6] Alvarez testified that he had "called the police to get help with being allowed to take physical possession -- possession, but the officers told [him that] the only way that could happen is if [James] was outside; and at that point [Alvarez] could take physical possession."

Alvarez's only other witness was Maureen. She testified that Alvarez and James "had a good relationship" before the April 2022 incident and that there was no change to their relationship after that incident; James spent the full month of July 2022 with Alvarez and seemed to have a good time.[7] According to Maureen, it was not until September 2022 when James said that he did not want to come and spend

---

[5]Nobody cited a section number in the Family Code on the record, but based on the colloquy between Alvarez and his attorney on direct examination, it appears that this is the statute to which they referred: "A parent of a child has the . . . right to have physical possession, to direct the moral and religious training, and to designate the residence of the child." Tex. Fam. Code Ann. § 151.001(a)(1).

[6]On the witness stand, Alvarez referenced a "court order," but no court order was introduced into evidence, and neither party appears to have asked the trial court to take judicial notice of any such order.

[7]Maureen elaborated on this point:

[James] always challenged his dad any chance he could possibly get, and he always picked his brain about things he was learning in school and wanted to know whether it was true or not; and they would have long conversations. And if they ever fought or got into an argument, they always talked about it afterwards, no matter what happened.

7

time with Alvarez. Maureen testified that James happened to change schools around that time.

Although Maureen did not personally witness the altercation between Alvarez and James at Hannah's house on November 10, 2022, she testified that Alvarez "was so sad" and "was [in] tears and shock" when he came home after that incident. She believed that he would "[n]ever" intentionally hurt any of his children or her children.

The jury found Alvarez guilty of the offense of injury to a child as charged in the indictment. The trial court, which Alvarez had requested assess his punishment, sentenced him to three years in prison and a fine of $1,000. The trial court probated both the fine and prison term and placed Alvarez on probation for a term of 48 months.

## V. Sufficiency of the Evidence

In his only appellate point, Alvarez argues that the evidence at trial was insufficient to show that he intentionally caused bodily injury to James. In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We must scrutinize circumstantial evidence of intent as stringently as other types of evidence. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). When the record supports conflicting inferences, a reviewing court must presume—

8

even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Petetan v. State*, 622 S.W.3d 321, 337 (Tex. Crim. App. 2021).

Here, the indictment charged that Alvarez "DID INTENTIONALLY *OR KNOWINGLY* CAUSE BODILY INJURY TO [JAMES], A CHILD YOUNGER THAN 15 YEARS OF AGE, BY GRABBING HIM WITH [HIS] HAND . . . AND/OR BY DRAGGING HIM WITH [HIS] HAND." [Emphasis added.] This tracks the language of the statute under which Alvarez was charged: "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . bodily injury." Tex. Penal Code Ann. § 22.04(a)(3).[8] Thus, the evidence is sufficient to support Alvarez's conviction if any rational factfinder could have found beyond a reasonable doubt that Alvarez intentionally *or* knowingly caused James, a child younger than 15 years of age, bodily injury.

"A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result."[9]

---

[8]A separate subsection provides that an offense under Subsection (a)(3) is a third-degree felony "when the conduct is committed intentionally or knowingly." Tex. Penal Code Ann. § 22.04(f). Another subsection defines a child as "a person 14 years of age or younger." *Id.* § 22.04(c)(1).

[9]Injury-to-a-child offenses under Section 22.04 are result-oriented and require a mental state that relates not to the specific conduct but to the result of that conduct. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022). Within the context of

Tex. Penal Code Ann. § 6.03(b). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8).

Alvarez testified at trial that he "grabbed [James's] hand and told him, now you don't have a choice because I'm taking physical possession." Although Alvarez attempted to explain his use of the term "physical possession" in the context of the Family Code, the jury saw the video from Alvarez's own cell phone in which, before Alvarez had laid a hand on James, Hannah admonished him, "I'm sorry, um, we're not gonna do this whole like, you're taking physical control of him," and making clear that that was why she was not permitting Alvarez to enter her house. After Alvarez took hold of James's wrist but immediately before James pulled away, Alvarez said to him, "I have physical possession of you now." Multiple videos showed Alvarez pulling James out of Hannah's house by the arm—and then by his leg. Even after Hannah screamed, "Stop! You're hurting him," Alvarez did not relent and repeatedly said, "I'm not letting go." He dragged James across the concrete porch. James screamed at and pleaded with Alvarez, but Alvarez insisted, "I have physical possession of my son."

---

Section 22.04, then, a defendant "knowingly" causes injury to a child when he is aware with reasonable certainty the injury would not result "but for" the defendant's conduct. *Payton v. State*, 106 S.W.3d 326, 331 (Tex. App.—Fort Worth 2003, pet. ref'd) (quoting *Patterson v. State*, 46 S.W.3d 294, 302 (Tex. App.—Fort Worth, 2001, no pet.)).

10

James testified that he had marks, bruises, and scrapes on his body that hurt and that were not there before the November 10 incident with his father. He testified that his father caused these injuries. He testified that it hurt when his father tightened his grip on his wrist and caused him physical pain. Viewed in a light most favorable to the jury's verdict, we hold that a rational factfinder could have found beyond a reasonable doubt that Alvarez knowingly caused bodily injury to James.[10] The evidence is therefore legally sufficient to support Alvarez's conviction, and we overrule his only point on appeal.

## VI. Conclusion

Having overruled Alvarez's only point, we affirm the trial court's judgment.

---

[10]In his brief, Alvarez details his son's behavioral and disciplinary issues at school and argues, "Clearly, [Alvarez]'s actions on the night in question were directed by his manifested apprehension regarding his son's behavioral violations which had led to [James]'s suspension and placement at an alternative school." This argument misplaces the focus on the motivation behind Alvarez's actions and not his culpable mental state, which is the only element of the offense he challenges in his evidentiary-insufficiency point. He does not even argue that the evidence was insufficient to disprove the defense of reasonable discipline, *see* Tex. Penal Code Ann. § 9.61(a), which the jury was instructed on and chose to reject. Additionally, Alvarez's argument fails to view the evidence in the light most favorable to the jury's guilty verdict, which is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 24, 2025